M. E. CLAPP, Receiver of Mills County National Bank of Glenwood, Appellee, v. F. J. WALLACE, Appellant.

No. 43319.

APRIL 7, 1936.

Genung & Genung, for appellant.

Cook & Cook, for appellee.

KINTZINGER, J.—On or about September 16, 1930, J. W. Watkins and Gus W. Watkins, his son, made and executed their promissory note to one F. H. Raynor in the sum of $165.25. This note was also signed by the defendant Wallace, as surety thereon. The note was given to Raynor in payment of funeral expenses due him from the Watkinses for funeral services furnished in connection with the burial of Mrs. J. W. Watkins. The payee, Raynor, indorsed the note and sold it to the Mills County National Bank. The defendant Wallace was vice president, director, and general manager of the bank, and had authority to make loans therefor.

This note was not paid when due, and on June 23, 1931, it was renewed by the execution of a new note on that date, executed and indorsed in the same manner as the first note, with defendant Wallace as surety thereon, and becoming due December 22, 1931.

This note was not paid when due, and on January 2, 1932, J. W. Watkins and Gus W. Watkins signed a new note to F. H. Raynor in the sum of $165.25, due July 2, 1932. This note was left at the Mills County National Bank when signed, and the note of June 23, 1931, was, by said Wallace, canceled and surrended to J. W. and Gus W. Watkins, and the third note was then substituted in the bank's assets and records by the defendant Wallace for the previous note, and was thereafter carried as such in the records of the bank.

The bank became insolvent and went into the hands of a receiver in December, 1932. Thereafter, a payment of $25 was made to the receiver of the Mills County National Bank upon the note dated January 2, 1932, and credited upon the note. Thereafter, said receiver also commenced an action in the district court of Mills county against J. W. Watkins, Gus W. Watkins, and F. H. Raynor on the note dated January 2, 1932. The plaintiff, however, filed an amended and substituted petition in that action, alleging that the note of January 2, 1932, was intended as a renewal of the note dated June 23, 1931; in the substituted petition, plaintiff alleges that F. J. Wallace, defendant in this action and the surety on the note of June 23, 1931, was, at the time of the execution of that note, vice president, director, and manager of the Mills County National Bank; that said Wallace was at that time indebted to the Mills County National Bank, as surety on the note of June 23, 1931, and although vice president and manager of the bank, he took into the assets of the bank the note of January 2, 1932, in substitution of the note of June 23, 1931, on which he was personally liable as surety, without signing the same as surety, and without securing the indorsement of F. H. Raynor thereon. That without authority, therefore, he surrendered the note of June 23, 1931, to J. W. Watkins and Gus W. Watkins; that the note of January 2, 1932, was intended a renewal of the indebtedness represented by the note of June 23, 1931, but had not been indorsed by either Wallace or Raynor; that said Wallace, in his capacity as an officer of the bank, had no authority to accept the note of January 2, 1932, in renewal of the indebtedness evidenced by the note of June 23, 1931, without signing the same as surety or securing the indorsement of the payee Raynor thereon. In said substituted petition, plaintiff further alleged that the debt evidenced by the note of June 23, 1931, was not paid

either by Wallace or by the note of January 2, 1932, taken as an attempted renewal of the debt evidenced by the note of June 23, 1931, without the signature of Wallace, as surety, and without the indorsement of Raynor; that there is due thereon from *Watkinses* and *Raynor* the sum of $155.76 and interest; plaintiff, in the substituted petition, therefore, asks judgment thereon against the defendants, J. W. Watkins, Gus W. Watkins, and F. H. Raynor, for the sum of $155.76.

The court, in the judgment in that action, held that although that

"Suit was originally brought upon the third note, * * * by amended and substituted petition plaintiff * * * seeks to recover upon the second note, on the ground that Wallace as an officer of the bank and signer upon the second note could not cancel his own debt, and therefore said second note, not having been paid, is still outstanding and * * * the obligation of all the parties whose names it bears. * * * The matter of the liability of Wallace for such act is not in issue and is not determined herein."

Judgment was, therefore, entered in favor of the plaintiff against the defendants J. W. Watkins and Gus W. Watkins in the sum of $203.41.

The present action was brought against the defendant Wallace upon his indebtedness as surety upon the note of June 23, 1931, and judgment was rendered thereon against him in the sum of $155.76 and interest. From this judgment, the defendant Wallace appeals.

I.   Appellant contends that the substitution of the note of January 2, 1932, for the perfectly good note of June 23, 1931, released him from his indebtedness to the bank on the latter note.

Appellee contends that the act of Wallace, vice president and directing manager of the bank, in accepting the note of January 2, 1932, which contained neither the indorsement of Wallace nor Raynor, did not constitute a release of the indebtedness of Wallace and Raynor on the note of June 23, 1931.

There is no testimony in this record tending to show that any of the officials of the bank had any knowledge of or gave any consent to the substitution of the note of January 2, 1932, for the note of June 23, 1931, containing the indorsement of appellant, as surety, and that of Raynor, transferring the note.

The facts show without dispute that Wallace, as an individual, signed the note of June 23, 1931, as a surety, and became liable for the indebtedness represented thereby. It is also undisputed that Wallace's debt, as surety, was never paid. At the time of the transactions in question, Wallace was the agent for and represented the bank. It was his duty, as agent of the bank, to collect this debt. His personal interests, because of his indebtedness on the note, conflicted with his duty to the bank, his employer.

▉▉▉ It is the settled rule of law that an agent cannot represent both himself and his employer in transactions where their interests are adverse. Caffee v. Berkely, 141 Iowa 344, 118 N. W. 267; First National Bank v. Fireproof S. B. Co., 199 Iowa 1285, 202 N. W. 14; Hoyt v. Hampe, 206 Iowa 206, 214 N. W. 718, 220 N. W. 45; 14A Corpus Juris, 108; 7 R. C. L. 479; Note 48 A. L. R. 918; 21 R. C. L. 825; U. S. v. Carter, 217 U. S. 286, 30 S. Ct. 515, 54 L. Ed. 769, 19 Ann. Cas. 594; Note 13 A. L. R. 911.

In First National Bank v. Fireproof S. B. Co., 199 Iowa 1285, loc. cit. 1295, 202 N. W. 14, 19, this court said:

"In the enjoyment of this right, however, he was bound to exercise the utmost good faith, to act for and in the interest of the corporation, and not for his own benefit or profit. Officers and directors of a corporation occupy a fiduciary relation toward the stockholders in the transaction of the business and care of the property of the corporation."

In Hoyt v. Hampe, 206 Iowa 206, loc. cit. 220, 214 N. W. 718, 724, 220 N. W. 45, this court said:

"That directors sustain a fiduciary relation to stockholders is conceded. The policy of the law is to put fiduciaries beyond the reach of temptation, by making it unprofitable for them to yield to it. To that end, an act of the fiduciary * * * is voidable at the mere option of the beneficiary, regardless of good faith or results."

"The law does not permit the directors or officers of a corporation to give away its property, or to appropriate it * * *, or to make any self-serving disposition of it, or to divert it for other than corporate purposes." 14a Corpus Juris, 108.

"The employee is duty bound not to act in * * * opposi-

tion to the interests of the employer. Everyone—whether * * * agent, trustee, servant or what not—who is under contract or other legal obligation to represent or act for another in any particular business * * * must be loyal and faithful to the interest of such other in respect to such business * * *. He cannot lawfully serve or acquire any private interest of his own in opposition to it. This is a rule of common sense and honesty as well as of law." 21 R. C. L. 825, section 10.

■■■ It is contended that because Wallace, as vice president, director, and general manager, knew of the substitution, that his knowledge was knowledge of the bank. It must be remembered, however, that when Wallace substituted the note of January 2, 1932, for the prior note of June 23, 1931, he was attempting to release himself from his obligation as a surety thereon. Under such circumstances, his acts in so doing were in direct conflict with his duty toward the bank, and, as such, notice to him cannot be imputed to the bank.

It may be the general rule of law in ordinary transactions, that knowledge of the agent constitutes notice to the principal. Such rule, however, "does not apply where the circumstances are such as to raise a clear presumption that he will not communicate his knowledge to the corporation, that is, where the fact is one which he is interested in concealing from it; and accordingly the corporation will not -be charged with notice of facts of which an officer or agent acquires knowledge while acting in a transaction in which he is interested, * * * adversely to the corporation, or in a scheme in which he is engaged to defraud the corporation. Thus where an officer or agent of a corporation deals with the corporation for himself in his private capacity, any uncommunicated knowledge which he may have in respect to the transaction will not be imputed to the latter by reason of his possession of it." 14a Corpus Juris, 490; Caffee v. Berkely, 141 Iowa 344, 118 N. W. 267; Twin-Lick Oil Co. v. Marbury, 91 U. S. 587, 23 L. Ed. 328; Oregon & C. R. Co. v. Grubissich, 206 F. 577, 124 C. C. A. 375.

It is our conclusion that under the relations existing between the Mills County National Bank and Wallace, as its vice president and general manager, Wallace could not, under the facts of this case, release himself from his obligation to the bank on his surety contract on the note of June 23, 1931. As the

latter note has never been paid by Wallace or any one else, the defendant is still liable for his indebtedness thereon. Such was the ruling of the lower court, and we find no error therein.

■■■ II. It is contended that the acceptance by the receiver of the Mills County National Bank of a payment of $25 upon the note of January 2, 1932, constituted a ratification by the bank of the acts of Wallace in taking it into the assets of the bank as a substitute for the indebtedness as evidenced by the note of June 23, 1931.

The payment of $25 by the makers of the note in question was accepted by the receiver of the bank as a payment upon the indebtedness of the Watkinses due the bank. The acceptance of this money by the receiver of the bank can in nowise be considered a ratification by the Mills County National Bank of the acts of the defendant Wallace in attempting to substitute the note of January 2, 1932, for the indebtedness of Wallace to the bank as surety on the note of June 23, 1931.

It was the receiver's duty to collect all debts due and owing the bank. The Watkinses were indebted to the bank for the amount shown on the note of January 2, 1932. The receiver had no power to ratify any wrongful acts committed by the defendant Wallace while he was manager of the bank. Upon the bank's insolvency and the appointment of a receiver, the authority of the officers of the bank terminated, and the bank no longer functioned as a going concern. It then became the duty of the receiver to wind up the affairs of the bank by collecting all assets due and making proper distribution. It is conceded that the Watkinses were indebted to the Mills County National Bank, whether it was upon the note of June 23, 1931, or upon the note of January 2, 1932, and when they paid the receiver $25 upon that indebtedness, it was the duty of the receiver to accept the same and give the Watkinses credit therefor.

We are constrained to hold that such action on the part of the receiver is not a sufficient ratification to constitute an estoppel.

■■■ III. It is also contended that because the receiver commenced an action against the Watkinses and Raynor upon the note of January 2, 1932, they have elected to pursue their remedy upon that note and are, therefore, now estopped from commencing another action against the defendant Wallace upon his indebtedness as surety on the note of June 23, 1931.

The record shows, however, that while the action was originally commenced by the receiver against the Watkinses and Raynor upon the note of January 2, 1932, the plaintiff in that action filed an amended and substituted petition in which he seeks judgment against the defendants upon their indebtedness evidenced by the note of June 23, 1931, as disclosed by the statement of facts hereinabove set out. The defendant Wallace was not made a party to that action, and the court, in rendering judgment therein, held that the defendants J. W. and Gus W. Watkins were liable to the receiver upon the indebtedness evidenced by the note of June 23, 1931. No judgment was rendered in that action against the defendant Wallace. The court in that action expressly held that the matter of the liability of Wallace was not in issue and not determined therein.

The defendant Wallace in the case at bar is sued upon his contract of suretyship on the note of June 23, 1931. It is therefore clear that there was no election on the part of the receiver to pursue his remedy against the obligor on the note of January 2, 1932, in the former action. On the contrary, the issues presented by the amended and substituted petition clearly show an intention on the part of the receiver to secure a judgment against the Watkinses and Raynor, upon their indebtedness evidenced by the note of June 23, 1931. That action was, therefore, not inconsistent with the present action against the defendant Wallace on his liability as surety upon the note of June 23, 1931.

■■■ The fact that the defendant Wallace was not joined in that action does not estop or bar the receiver from commencing a separate action upon the same debt. Section 10975 of the Code of 1931. This section provides that:

"Where two or more persons are bound by contract or by judgment, decree, or statute, whether jointly only, or jointly and severally, or severally only, including the parties to negotiable paper, * * * and sureties on the same * * * action thereon may, at the plaintiff's option, be brought against *any* or *all* of them. * * * "

It is the settled rule of law in this state that under the foregoing statute an action may be commenced against one of several parties jointly bound on such an instrument, or against all collectively. Marshall County v. Knoll, 102 Iowa 573, 69 N. W. 1146, 71 N. W. 571; Smith v. McFadden, 56 Iowa 482, 9 N. W.

350; Bannister v. McIntire, 112 Iowa 600, 84 N. W. 707; Fellows v. Errington, 186 Iowa 322, 170 N. W. 545.

In Marshall County v. Knoll, 102 Iowa 573, loc cit. 576, 69 N. W. 1146, 1147, 71 N. W. 571, this court, in construing section 10975, says:

"Under these provisions an action may be brought against a surety alone, and, when he is joined with his principal, judgment may be rendered against him before it is against his principal."

We are constrained to hold that the plaintiff receiver was not estopped from commencing this action because of the former judgment entered.

For the reasons hereinabove set out, it necessarily follows that the judgment of the lower court must be, and is hereby, affirmed.—Affirmed.

DONEGAN, C. J., and ALBERT, ANDERSON, RICHARDS, HAMILTON, PARSONS, and STIGER, JJ., concur.